FILED

2009 Aug-05  PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| Gola Faye Taylor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 08-G-2120-M |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Gola Faye Taylor, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were

applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth, at 1239.

### STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1)      whether the claimant is currently employed;

(2)      whether she has a severe impairment;

(3)      whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Robert G. Faircloth, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony. Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

4

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## DISCUSSION

In the present case the plaintiff alleges disability due to multiple impairments including right femoral nerve neuropathy, depressive disorder with anxiety, osteoarthritis and obesity. The plaintiff testified that the primary reason she could not work was because of pain from her right femoral nerve neuropathy and osteoarthritis in her back. At her ALJ hearing the plaintiff testified that she had nerve pain in her upper leg and numbness and burning in her lower back. Record 285. She testified that she took pain medication including Lortab 10, Duragesic patches, and Soma in an effort to relieve her pain. She testified she took these medications daily every six to eight hours. She testified that before she took the medication, her pain was a seven or eight on a scale of one-to-ten. With the pain medication, she testified that her pain level came down to about a five. Record 285. The ALJ questioned the vocational expert about the impact of pain at the level testified to by the plaintiff:

ALJ:          Okay.  All right, now Ms. Taylor has indicated that she has the leg and back problems, and she had indicated she has pain.  She takes Lortab, Soma at times.  And she's stated her pain at a 5 after the meds, but it goes up higher than that.  How much did you say?

CLMT:        7 to 8.

ALJ:          7 to 8 without the meds.  It gets up to 7 to 8.  She takes meds.  It'd go down to five, and assume that the medical evidence would support pain to that extent.  What would be the vocational consequences?

VE:           Your Honor, this also would preclude work activity because this would be moderately severe pain.

ALJ:          This is the type pain that you're telling me would affect ability to concentrate, focus on job tasks, persist on the job, work at the speed you're normally expected to work and that type position, get along with people, and be dependable.  That is not less – not more than two days a month absenteeism?

VE:           Yes.

Record 306.  Therefore, if the plaintiff's pain testimony is accepted as true, she would be disabled based upon the testimony of the vocational expert.  Because the ALJ found that the plaintiff met the Eleventh Circuit pain standard, her testimony must be accepted as true unless she was properly discredited by the ALJ.

       A review of the ALJ's decision reveals that his reasons for refusing to credit the plaintiff's testimony are not supported by substantial evidence.  After finding the plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, the ALJ's only stated reasons for rejecting her testimony was as follows:

Although the claimant has alleged that she is unable to work due to her neuropathy, she testified that with medication, her pain was a 5/10 and reported that her lower extremity pain was "much improved" when she engaged in less walking during the day (Exhibits13F, 3F, and 2F).  Indeed, Dr. Conner's treatment notes show that only standing and walking were repeatedly reported to increase her pain (Exhibit 13F).  As the evidence shows that the claimant has decreased symptoms when she does not engage in prolonged walking or standing, the claimant would be well-suited for sedentary work, as it does not require such prolonged physical exertion.

Record 19-20.  In reality, the plaintiff testified at her hearing that her pain increased to seven to eight on a daily basis.  Her testimony was that because of that pain she had to take narcotic pain medications every six hours.  She testified she was unable to sit for more than one hour before she had to stand up to get relief from her pain.  Record 285.  When questioned about her daily activities, she indicated that she spent most of the day sitting on the couch or on the porch.  Record 286.  She testified that she slept very poorly because of her pain: "Usually I wake up.  My legs are bothering me, pain.  I'll get up.  I'll take some medicine, try to rub my legs trying to get them to quit hurting.  And I'll lay back down and try to get some more sleep."  Record 286.  She testified that she was unable to engage in hobbies that she had previously enjoyed:  "I used to travel at least twice a year to the casinos.  I don't do that anymore.  Used to go to bingo once every week.  I stopped doing that because I cannot sit there for that long.  I used to go fishing in the summertime, which I don't do that anymore."  Record 287.  Clearly the plaintiff's testimony was that she suffered severe pain on a daily basis in spite of engaging in a little in the way of physical activity.

While the ALJ cites medical records to support his conclusion that the plaintiff would not suffer disabling pain as long as she did not engage in prolonged walking or

standing, the record does not support this.  While there are notations suggesting that

increased walking and standing worsened her pain, the medical records do not indicate the

plaintiff's pain was less than severe even when she refrained from those activities.  In fact,

the medical treatment notes indicate that the plaintiff complained of pain in excess of 7/10 on

dozens of occasions.  The medical evidence shows a "longitudinal history of complaints and

attempts at relief" that support the plaintiff's pain allegations.  See SSR 96-7P 1996 WL

374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's

attempts to seek medical treatment for pain or other symptoms and to follow that treatment

once it is prescribed lends support to an individual's allegations of intense or persistent pain

or other symptoms for the purposes of judging the credibility of the individual's

statements.").  A representative treatment note dated November 3, 2006, shows the plaintiff

complained of pain at a level of 10/10.  It was described as "constant pain."  Record 220.

Contrary to the ALJ's assertion, the medical records do not reasonably support his conclusion

that the plaintiff only suffered severe pain with prolonged walking and standing.

There is no evidence to support the ALJ's statement that the plaintiff testified

she always suffered pain at a level 5/10 or less while taking medication and refraining from

prolonged walking or standing.  The ALJ took the plaintiff's testimony out of context.  Her

testimony was that her pain increased to seven or eight out of 10 on a daily basis and required

narcotic pain medication every six hours.  The vocational expert, who heard the plaintiff's

testimony about her pain, testified that if it were as she described it, she would be unable to

work.  While her pain may have been reduced to 5/10 at times after taking pain medication,

the clear import of her testimony was that it again increased to in excess of 7/10, thus requiring additional pain medication.

Just as Judge Allgood observed in <u>Lamb v. Bowen</u>, the present "record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain.  No examining physician ever questioned the existence of appellant's pain.  They simply found themselves unable to cure the pain."  847 F.2d 698, 702 (11th Cir. 1988).  The reasons recited by the ALJ for refusing to credit the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, that testimony must be accepted as true and, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  <u>Id.</u>  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 5 August 2009.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

9